UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

DAVID EBRAHIMZADEH,

Debtor.

-----------------------------------------------------------x

Case No: 1:17-11224-mkv

Chapter 11

**APPLICATION IN SUPPORT OF ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND IN REM RELIEF**

Knighthead SSRE REIT, Inc. ("**Knighthead"**), a mortgagee and first lien holder of that certain real property located at 170 East 77th Street Apartments 7A/8A New York, NY 10075 (Block 1411; Lot 1130) (the "**Property**") respectfully submits this application (the "**Application**") for the entry of an Order, granting Knighthead relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), and 362(d)(4), waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3), and for such other and further relief as the Court deems just and proper. In support of this Application, Knighthead respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     David Ebrahimzadeh ("**Debtor**") is a mere occupant at the Property, who admittedly holds neither a leasehold nor an ownership interest in the Property. On January 22, 2015, Knighthead commenced an action against defendants Diamond Condo LLC ("**Borrower**"), the owner of the Property, and Felice DiSanza, as guarantor, in the Supreme Court of the State of New York, County of New York, to foreclose the Mortgage on the Property under Index No. 850018/2015 (the "**Foreclosure Action**"). As evidenced by the deed to the Property annexed hereto as **Exhibit "L"**, the Property is not owned by the Debtor, but rather, is owned by Borrower, a Chapter 11 Debtor in a separate pending bankruptcy case before this Court (Case No. 16-10619).

2.     Since the Debtor's entire legal connection with the Property stems from his status

as an occupant, it is clear that the Debtor's bare possessory interest cannot withstand Knighthead's application for relief from the automatic stay.

3. Relief from stay must be granted in favor of Knighthead, because cause exists to grant relief from the stay, the Debtor lacks an equity in the Property, and the Property is not necessary to an effective reorganization that is in prospect. Therefore, relief from the automatic stay should be granted pursuant to 11 U.S.C. §§ 362(d)(1) & 362(d)(2).

4. Additionally, the instant bankruptcy filing represents the third, in series of bad faith bankruptcy filings by the Borrower, the guarantor, Felice DiSanza ("**DiSanza**"), and now the Debtor (collectively, the "**Debtor Parties**").

5. The Debtor's instant Chapter 11 case was clearly commenced in bad faith and solely for the purpose of preventing Knighthead from exercising its right to foreclose upon a mortgage secured by an asset which is the subject of a pending Foreclosure Action.

6. The instant petition was filed mere minutes before a scheduled foreclosure sale pursuant to a Judgement of Foreclosure and Sale. The instant case is part of the persistent abuse of the bankruptcy laws by the Debtor Parties with respect to the Property seeking to avoid foreclosure by filing multiple bankruptcies with no genuine intention or ability to confirm a plan of reorganization.

7. The Debtor's actions herein are not in good faith. The Debtor Parties are serial filer and should be prevented from continuing his blatant abuse of the judicial process. This is the THIRD bankruptcy filing in a series of bad faith bankruptcy filings by the Debtor Parties, as part of a scheme to hinder, delay and frustrate Knighthead's right to enjoy the Property. All of these filings were Chapter 11 cases filed on March 16, 2016 (Borrower Ch. 11), January 17, 2017

(DiSanza Ch. 11), and the instant petition filed on May 3, 2017.  The Debtor has no true intention to reorganize its financial affairs under Chapter 11 of the Bankruptcy Code, and his only intention is to hinder and delay Knighthead in enforcing its rights and remedies in the Foreclosure Action. None of the prior and ongoing Chapter 11 bankruptcy cases have been prosecuted to any meaningful degree.  Thus, the serial filings are evidence of bad faith, and evidence of the fact that Debtor Parties have been abusing the bankruptcy process since the first foreclosure sale of the Property was scheduled, and thereafter.  As a result, Knighthead seeks an Order granting "in rem" relief concerning any future bankruptcy filing relating to the property.

8. Accordingly, and for the reasons set forth more fully below, Knighthead respectfully requests that this Court enter an Order, granting Knighthead relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), and 362(d)(4) waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3), and for such other and further relief as the Court deems just and proper.

## JURISDICTION

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 361, 362(d)(1), 362(d)(2), and 362(d)(4) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Rules**").

3

## BACKGROUND

**The Loan, Note, Mortgage & Guarantee**

11. On or about July 18, 2014, the Knighthead made a loan to the Borrower, in the original principal sum of Four Million Three Hundred, Sixty-Five Thousand and 00/100 Dollars ($4,365,000.00) (the "**Loan**"). The Loan was evidenced by a *Secured Promissory Note* (the "**Note**") dated July 18, 2014, which was executed by Borrower, through member DiSanza. A copy of the Note is annexed hereto as **Exhibit "A"**.

12. To secure repayment of the indebtedness evidenced by the Note, on or about July 18, 2014, Borrower further executed and delivered to the Knighthead, a *Mortgage, Assignment of Leases and Rents and Security Agreement* (the "**Mortgage**"), which encumbered the Property in the principal sum of Four Million Three Hundred, Sixty-Five Thousand and 00/100 Dollars ($4,365,000.00). A copy of the duly executed Mortgage, which was recorded with the Office of the City Register of the City of New York, County of New York (the "**City Register**") on August 5, 2014 under CRFN: 2014000257878 is annexed hereto as **Exhibit "B"**.

13. To further secure repayment of the indebtedness evidenced by the Note, DiSanza duly executed and delivered that certain Guarantee dated as of July 18, 2014 ("**Guarantee**") in favor of Borrower. A copy of the Guarantee is annexed hereto as **Exhibit "C"**.

**Terms and Conditions of the Loan Documents**

14. Section 2 of the Note captioned *Payments* provides as follows:

Maker shall pay to Holder (a) on the date hereof (the "Funding Date"), all interest due under this Note for the period commencing on Funding Date through and including July 31, 2014, and (b) commencing on September 1, 2014, and on the first (1st day of each and every month thereafter through and including **August l, 2015** (such date, or such earlier date on which Holder accelerates payment of the

indebtedness evidenced hereby pursuant to the provisions hereof or of any of Loan Documents, being herein referred to as the "Maturity Date"). (emphasis added)

15. In addition, Section 11(c) of the Mortgage captioned *Transfer or Encumbrance of the Mortgaged Property* expressly provide as follows:

> Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable **upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof without Mortgagee's consent.** This provision shall apply to every sale, conveyance, alienation mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, **mortgage, encumbrance, pledge or transfer of the Mortgaged Property.** (emphasis added)

**Debtor's Defaults Under the Loan**

16. On or about August 20, 2014, the Borrower defaulted under and violated the terms of the Mortgage (the "**First Default**") at Section 11(c), by giving a subordinate mortgage (the "**Second Mortgage**") which further encumbered the Property to Samuel Shpelfogel ("**Shpelfogel**") in the original principal sum of $500,000.00, which Second Mortgage was dated August 20, 2014 and recorded with the City Register on August 28, 2014 as CRFN: 2014000286674. A copy of the Second Mortgage is annexed hereto as **Exhibit "D"**.

17. On or about September 18, 2014, the Borrower again defaulted under and violated the terms of the Mortgage (the "**Second Default**") at Section 11(c), by giving another subordinate mortgage (the "**Third Mortgage**") which further encumbered the Property to First Premier Capital LLC ("**First Premier**") in the original principal sum of $740,000.00, dated September 18, 2014 and recorded in the City Register October 1, 2014 as CRFN: 2014000324217. A copy of the Third Mortgage is annexed hereto as **Exhibit "E"**.

5

18. As set forth in the supporting Declaration of Laura Torrado (the "**Torrado Declaration**") at Paragraph 15, Borrower's failure to maintain Property taxes and common charges at the Property has caused Knighthead to advance not less than $85,919.00 since Borrower's Default (defined below) through the date hereof.

**The Forbearance Agreement**

19. After the First Default and the Second Default, the Borrower requested that Knighthead forbear from foreclosing on the Property and otherwise exercising upon its and remedies under the terms of the Loan Documents through and including December 17, 2014.

20. As a result, on or about November 7, 2014, the Borrower and Knighthead entered into that certain *Forbearance Agreement* (the "**Forbearance Agreement**" and together with the Note and Mortgage, the "**Loan Documents**") to address how the parties would treat the First Default and the Second Default. A duly executed true and correct copy of the Forbearance Agreement is annexed hereto as **Exhibit "F".**

21. Through the Forbearance Agreement, the Borrower, *inter alia,* acknowledged the First Default and the Second Default under the Mortgage, and requested that the Knighthead forbear from foreclosing on the Property through and including December 17, 2014, while the Borrower sought refinancing in an amount necessary to satisfy the Knighthead.

22. Notwithstanding, the Borrower defaulted under the Forbearance Agreement by failing to satisfy the Loan and payoff Knighthead by or before December 17, 2014 (the "**Third Default**").

6

**The Foreclosure Action**

23.     As a result of the Third Default and the Borrower's failure to cure same, on or about January 22, 2015, Knighthead commenced the Foreclosure Action.

24.     In connection with the Foreclosure Action, on or about January 6, 2016 the State Court entered a Judgment of Foreclosure and Sale ("**JFS**") which was filed in the Office of the New York County Clerk on February 4, 2016.  A copy of the JFS, which was served with Notice of Entry on the Debtor on or about February 5, 2016 is annexed hereto as **Exhibit "G"**.

25.     Thereafter, and in accordance with the JFS, Knighthead noticed a sale of the Property (the "**First NOS**") on March 16, 2016 at 2:00 p.m., a copy of which First NOS is annexed hereto as **Exhibit "H"**.

**The History of Bad Faith Bankruptcy Filings**

26.     On the same day as Knighthead's scheduled foreclosure sale of the Property on March 16, 2016, the Borrower commenced a voluntary case under Chapter 11 ("**Borrower Chapter 11**") of Title 11 of the United States Code (the "**Bankruptcy Code**").

27.     On May 4, 2016, Knighthead moved this Court for Relief from the Automatic Stay in the Borrower Chapter 11 pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) (the "**Motion for Relief**") [ECF No. 15], which Motion for Relief was made returnable before this Court on June 1, 2016.

28.     At a hearing on the Motion for Relief held on June 1, 2016, the Debtor and the Borrower appeared, and agreed to a resolution of the Motion for Relief, which ultimately resulted in the entry of an Order entered on November 10, 2016 [ECF No. 39] (the "**November Order**"), through which the Borrower waived all claims and defenses to the Motion for Relief, Knighthead's

7

secured claim and the underlying Loan, and as consideration therefore, the Knighthead agreed to, *inter alia*, refrain from conducting a foreclosure sale of the Property until November 30, 2016 (the "**Extended Deadline**"), in the event that Knighthead did not receive payment in full by the Extended Deadline.

29.    Knighthead did not receive payment in full by the Extended Deadline and as a result, this Court entered an Order on December 7, 2016 granting relief from the automatic stay in favor of Knighthead (the "**Relief Order**").

30.    In connection with the Relief Order and the JFS, Knighthead noticed a sale of the Property (the "**Second NOS**") on January 18, 2017 at 2:00 p.m., a copy of which Second NOS is annexed hereto as **Exhibit "I"**.

31.    By *Order Denying Ex-Parte Motion to Limit Notice Required for Motion to Dismiss Case and Stay of Foreclosure Sale* dated January 18, 2017 [ECF No. 55] (the "**January Order**"), this Court denied the Borrower's motion to dismiss this case and stay Knighthead's ability to conduct a foreclosure sale of the Property.

32.    As a result of this Court's entry of the January Order, on January 18, 2017, DiSanza filed petition for Chapter 11 relief before the United States Bankruptcy Court for the District of New Jersey (the "**NJ Court**") in his individual capacity, in the matter styled *In re Felice Di Sanza* under Case No. 17-10984-rg (the "**NJ Case**").

33.    On February 15, 2017, the NJ Court entered an Order granting relief from the automatic stay (the "**NJ Stay Order**") in favor of Knighthead, upon which Knighthead scheduled a foreclosure sale for May 3, 2017 (the "**Foreclosure Sale**").

8

34. Accordingly, Knighthead again noticed a sale of the Property for May 3, 2017. (the "**Third NOS**") a copy of which Third NOS is annexed hereto as **Exhibit "J"**.

35. On May 1, 2017, the Debtor and Borrower improperly emailed their latest Order to Show Cause ("**OSC**") for the Court, for the purpose of forcing this Court to bypass all procedure and So Order a Stipulation ("**Stipulation**") which was executed by and among the Debtor, the Borrower, and Knighthead, through which, Knighthead would have been granted prospective relief from the automatic stay, and the Borrower would have received an adjournment of the impending foreclosure sale, pending a dismissal of the Borrower's Chapter 11 case. A copy of the Stipulation is annexed hereto as **Exhibit "K"**.

36. Indeed, the Stipulation as signed by the Borrower and the Debtor, provides, among other things, that the Borrower and Debtor "acknowledge and agree that (a) no lease exists between the Occupant on the one hand, and the Debtor, DiSanza or any other party on the other hand with respect to the Property …" Stipulation, ¶ 13.

37. On the morning of May 3, 2017, this Court denied the OSC.

38. On the afternoon of May 3, 2017, they filed another OSC before State Court, alleging personal service on DiSanza was not valid. Notwithstanding, State Court declined to grant injunctive relief.

39. Minutes before the Foreclosure Sale on May 3, 2017, the Debtor filed his instant petition for Chapter 11 bankruptcy relief, in order to thwart Knighthead's ability to sell the Property.

## THE APPLICATION

40. Knighthead requests that this honorable Court enter an Order granting Knighthead

9

relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), 362(d)(4), waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3), and for such other and further relief as the Court deems just and proper.

### **RESERVATION OF RIGHTS**

41.  Knighthead expressly reserves its right to amend or supplement this Motion, to introduce evidence supporting this Motion at the hearing on the Motion, and to file additional and supplemental objections as Knighthead deems advisable.

### **NOTICE**

42.  Notice of this Motion has been provided to the Office of the United States Trustee, to the Debtor, and those parties entitled to notice in this chapter 11 case.  In light of the nature of the relief requested, Knighthead submits that no other or further notices need be provided.

43.  No previous application for the relief sought herein has been filed before this Court in this case.

**WHEREFORE**, Knighthead respectfully requests this Court enter an Order declaring the automatic stay is inapplicable, or in the alternative, granting Knighthead relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), 362(d)(4), and granting Knighthead "in rem" relief such that any and all future filings under the Bankruptcy Code shall not operate as a stay as to Knighthead's enforcement of its rights in and to the Property, waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3), and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 10, 2017

        KRISS & FEUERSTEIN LLP

        */s/ Jerold C. Feuerstein*
        Jerold C. Feuerstein (JF9829)
        360 Lexington Avenue
        Suite 1200
        New York, New York 10017
        (212) 661-2900

        *Attorneys for Knighthead SSRE REIT, Inc*.