# M. Cabrera & Associates, PC
## Attorneys At Law
**A New Jersey Professional Corporation**

| | | |
|---|---|---|
| **Mailing Address:** | Tel: (845) 531-5474 | **Physical Address:** |
| 2002 Route 17M, Suite 12 | Fax: (845) 230-6645 | 2002 Route 17M Suite 12, Lower Level |
| Goshen, NY 10924 | info@mcablaw.com | Goshen, NY 10924 |

Matthew M. Cabrera +
Joseph Reilly *+  

\+ Member NJ Bar
\* Member NY Bar

Via Electronic Filing

May 26, 2017

Honorable Mary Kay Vyskocil, U.S.B.J.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 1004-1408

    Re:    In re David Ebrahimzadeh; Case No.:17-11224

Dear Judge Vyskocil:

    Our firm represents the above referenced Debtor, David Ebrahimzadeh (hereinafter "the Debtor"), in connection with the filing of his Chapter 11 bankruptcy petition. Please accept this letter brief in opposition to the motion of Knighthead SSRE REIT, Inc. (hereinafter "Knighthead") wherein it seeks relief from the automatic stay as to continue with a pending foreclosure against the property located at 170 East 77th Street Apartments 7A/8A New York, New York 10075 (the "Property"), pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), and 362(d)(4).

    It is respectfully submitted that Knighthead's present motion is premature in that it fails to allow the Debtor any opportunity to restructure his debts in any meaningful manner. Furthermore, Knighthead's motion for relief from the automatic stay relies on three separate, but equally flawed and inaccurate assertions: 1) that the Debtor does not hold a legal or equitable interest in the Property; 2) there is no equity in the Property and it is not necessary for the

**M. Cabrera & Associates, PC**
══════════════ ATTORNEYS AT LAW ══════════════

MAY 26, 2017                                                                                                          PAGE 2

Debtor's effective reorganization, and 3) based on flawed bankruptcy filings of other separate entities and individuals, the Debtor's present bankruptcy was filed in bad faith.  As detailed below, each of these arguments fail on their merits, and the Court must deny this motion.

## BACKGROUND

On May 3, 2017, the Debtor filed a Chapter 11 bankruptcy petition, Case No. 17-11224, under Title 11 of the United States Code.  Ebrahimzadeh Cert ¶1.  The Debtor is a member of Diamond Condo LLC with an equitable interest in the Property, which is his current residence. Ebrahimzadeh Cert ¶17.  Since 2014, the Debtor has been responsible for paying the mortgage and costs associated with maintaining the Property.  Ebrahimzadeh Cert ¶17.  The prior owner of the Property, 170 E 77th Realty LLC, of which Mr. Ebrahimzadeh was a 50% member transferred the ownership of the Property to Diamond Condo.  Under an agreement with Diamond Condo, the deed to the Property was to be transferred to the Debtor personally; however when there was a default on the loan, the transfer did not take place.  Id.  The Debtor filed his present bankruptcy with the intention to keep the Property and address the Knighthead loan, as well as the second and third lien holders, and the condo fees due on the Property. Ebrahimzadeh Cert ¶5.

Knighthead has a foreclosure judgment by default in the amount of $5,482,128.35 (plus costs and interest) on the Property.  See Exhibit G attached to Knighthead's moving papers.  In addition to the Knighthead mortgage and judgment, the Property is encumbered by a second mortgage in the approximate amount of $500,000, a third mortgage in the approximate amount of $740,000.  There are also property taxes and common charges owed, which upon information and belief, were advanced by Knighthead, in the amount of $85,919.

**M. Cabrera & Associates, PC**
═══════════════════ ATTORNEYS AT LAW ═══════════════════

MAY 26, 2017                                                                                                    PAGE 3

On May 10, 2017, prior to allowing the Debtor to file his complete schedules and a plan, Knighthead filed the present motion seeking relief from the automatic stay on the Property, so that it could auction the Property at sheriff's sale. Knighthead took this action despite having agreed to refinance / buyout its loan several times prior to the Debtor's bankruptcy filing, with the most recent agreement being less than one week before the filing. See Ebrahimzadeh Cert ¶6.

The Debtor is also actively involved in the ongoing Chapter 11 Case of *In re Diamond Condo, LLC*, Case No.: 16-10619, which is before this Court; Mr. Ebrahimzadeh has appeared before the Court representing the Debtor's interests and spearheaded all discussions with Knighthead regarding the buyout / renegotiation of its loan. While the Diamond Condo bankruptcy was pending, Knighthead and the Debtor entered into an agreement which allowed him to refinance the loan and close by the end of October 2016. See Ebrahimzadeh Cert ¶7. Soon, it became readily apparent that the allotted time was insufficient for the Debtor to complete the closing and an additional month to complete the closing was bargained for in exchange for an additional payment to Knighthead of $100,000.00. Id.

The Debtor had personal circumstances, specifically emergency medical procedures for his wife and newborn child at the end of November 2016, which again made it impossible for him to complete the terms of the original agreement within the allotted time. Id. Despite continued attempts by the Debtor to assure Knighthead of his intentions to close per the terms of the agreement, Knighthead scheduled the Property for a sheriff's sale when the property did not close by the end of November 2016.

Prior to new sale date in 2017, Felipe DiSanza, a personal guarantor on the loan, filed his own Chapter 11 case in the United States Bankruptcy Court, District of New Jersey, Case No.:

**M. Cabrera & Associates, PC**
═══════════ ATTORNEYS AT LAW ═══════════

MAY 26, 2017                                                                                                                   PAGE 4

17-10984. Ebrahimzadeh Cert ¶8. To the best of the Debtor's knowledge, there were other reasons for DiSanza's bankruptcy filing, including, but not limited to another foreclosure case pending in a court in Pennsylvania, who recently filed and received a lift of the stay in that case to proceed with their foreclosure as well as other financial liabilities not merely the pending foreclosure on the Property at issue. Ebrahimzadeh Cert ¶9. After DiSanza's filing, Knighthead undertook similar tactics as it has in the present case, filing for immediate relief from the automatic stay with regard to the Property at issue, and alleging a "bad faith" filing. Counsel for DiSanza apparently believed that these allegations would be resolved if DiSanza could refinance the loan, and subsequently failed to file various schedules. Knighthead has now cited the Debtor's failure to file said documents as a basis for the present Debtor supposedly filing in "bad faith." See Ebrahimzadeh Cert ¶10.

In the DiSanza bankruptcy, Knighthead again agreed to supposed terms in which it would allow a refinance of the loan; most recently, Knighthead had agreed with Diamond Condo to settle its mortgage claim for an amount of $5.8 million. See Exhibit K to Plaintiff's moving papers. However, the agreement provided for an expedited closing date which was unrealistic in its timing, and indicated that any adjournment of the sheriff's sale was at Knighthead's **sole discretion.** See Ebrahimzadeh Cert ¶11. The Stipulation also included one-sided clauses wherein the Debtor Parties (Diamond Condo and Felipe DiSanza) would agree not to seek a further stay of the Foreclosure Sale and waive any right hereby waive any righto file any application to impede the ability to conduct the foreclosure sale. Ultimately, the agreement was not executed by DiSanza, due to the wording of the same. See Ebrahimzadeh Cert ¶12. When the Stipulation and Order was submitted to this Court, your Honor refused to sign the Order

**M. Cabrera & Associates, PC**
═══════════════ ATTORNEYS AT LAW ═══════════════

MAY 26, 2017                                                                                                    PAGE 5

submitted, advising the parties that it would be proper for a motion to be filed to approve the settlement on notice to all parties. See Ebrahimzadeh Cert ¶13.

Knighthead simply asserts that there is no equity in the Property to secure its claim, without any evidence to support the same. See generally, Application and Memorandum of Law of Feuerstein, Declaration of Torrado, and supporting Exhibits. The Debtor has provided an Appraisal valuing the Property at a minimum of $8.6 million as 2014, which shows significant equity, clearly enough to protect Knighthead's secured interest in the Property. See Ebrahimzadeh Cert ¶¶15, 16; and Appraisal attached thereto as **Exhibit A**. With the robust New York real estate market, an updated appraisal would clearly indicate the Property has even greater equity.

As a matter of course, it is respectfully submitted that the motion is premature and the matter is not ripe for determination at this point. Regardless of the prematurity of the lift stay motion, it is also evident that Knighthead's motion fails on substantive grounds, as there is no basis to lift the stay against the Property under 11 U.S.C. § 362, as it would clearly prevent the Debtor's effective reorganization.

### A. The Automatic Stay is Fundamental to the Reorganization Process

Section 362(a)(1) of the Bankruptcy Code provides that

(a)…[A] petition filed under section 301, 302 or 303 of this title…operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986). See also In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 836 (Bankr. S.D.N.Y. 1990). The broad protection of the automatic stay extends to all matters that may have an effect on a debtor's estate and is designed to relieve "the financial pressures that drove [the debtor] into bankruptcy." H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297; Official Committee of Unsecured Creditors v. PSS Steamship Co., 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). It does this by providing the debtor with a "breathing spell" after the commencement of the bankruptcy, shielding it from creditor harassment at a time when the debtor's personnel should be focusing on restructuring. See Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract…debtor's attention from its primary goal of reorganizing"); see also AP Indus. Inc. v. SN Phelps & Co. (In re APIndus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The purpose of the protection provided by chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its business and to enable the debtor to generate revenue.").

The automatic stay also allows the Debtor to "exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization." Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case), *cert. denied*, 429 U.S. 1093 (1977). Further, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." AP Indus., 117 B.R. at 798.

**M. Cabrera & Associates, PC**
═══════════ ATTORNEYS AT LAW ═══════════

MAY 26, 2017                                                                                                                                              PAGE 7

There is no question that equitable interest in property is regarded as property of the estate within the meaning of 11 U.S.C. § 541. The commencement of a bankruptcy case creates an estate which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as other property that may be recaptured during the bankruptcy. 11 U.S.C. § 541(a)(1).

In the present case, it is clear that the Debtor's interest in the Property is more than a mere "possessory interest," as alleged by Knighthead. The Debtor is a 50% owner of Diamond Condo LLC, which executed all relevant documents: The original promissory note, mortgage, subordinate mortgage, forbearance agreement, etc. But for the default on mortgage, the Property would be titled in Debtor's name. In addition, Knighthead has previously recognized and acknowledged that the Debtor is the party in interest, as it has continued to negotiate with Ebrahimzadeh, without the active involvement of DiSanza, who is listed on the documents as the 100% owner of Diamond Condo. To discount its negotiations and assert that the Debtor is an "occupant" with only a possessory interest is an attempt to discount the reality of the situation and its past dealings with the Debtor and Diamond Condo.

### B. Knighthead has Failed to Meet its Burden of Establishing Cause to Modify the Automatic Stay

Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances. 11 U.S.C. § 362(d); In re Éclair Bakery Ltd., 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000). Specifically, relief from the stay will be granted only where the party seeking relief demonstrates "cause."

Knighthead has moved to lift the stay on the Property based on 11 U.S.C. 362(d)(1) and (d)(2), which provide as follows:

**M. Cabrera & Associates, PC**
═══════════ ATTORNEYS AT LAW ═══════════

MAY 26, 2017                                                                                              PAGE 8

    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (a) of this section, if—

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization;

See 11 U.S.C. 362(d)

    The statute does not define what constitutes "cause," however, courts in this circuit have provided a guide and determined that in examining whether cause exists they "must consider [the] particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." In re Mego Int'l, Inc., 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

    In determining the equities as to all parties in interest with respect to lifting the automatic stay, courts in the Second Circuit follow the seminal decision of In re Sonnax Industries, Inc., 907 F.2d 1280 (2d Cir. 1990). See, e.g., Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate.").

    In *Sonnax*, the court outlined twelve factors to be considered when deciding whether to lift the automatic stay:

    (1)  whether relief would result in a partial or complete resolution of the issues;
    (2)  lack of any connection with or interference with the bankruptcy case;
    (3)  whether the other proceeding involves the debtor as a fiduciary;

    (4)  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
    (5)  whether the debtor's insurer has assumed full responsibility for defending it;
    (6)  whether the action primarily involves third parties;
    (7)  whether litigation in another forum would prejudice the interests of other creditors;
    (8)  whether the judgment claim arising from the other action is subject to equitable subordination;
    (9)  whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
    (10)  the interests of judicial economy and the expeditious and economical resolution of litigation;
    (11)    whether the parties are ready for trial in the other proceeding; and
    (12)    impact of the stay on the parties and the balance of harms.

In re Sonnax, 907 F.2d at 1286.

Only those factors relevant to a particular case need be considered and the court need not assign them equal weight. In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the Sonnax factors. Id. at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. Id. Further, the cause shown must be "good cause." Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd., 38 B.R. 987, 998 (S.D.N.Y. 1984) ("Cause shown [to] avoid the proscription of section 362 [must be] good cause.").

In the present case, Knighthead has failed to meet their burden to establish good cause to lift the automatic stay. Under 11 U.S.C. 362(d)(1), Knighthead's judgment claim is adequately protected by the Property. It moved prematurely, seeking stay relief, without even bothering to appraise the Property and determine its value. Upon review, the Property is worth more than $8 million – probably over $10 million – providing considerable equity to secure Knighthead's judgment.

**M. Cabrera & Associates, PC**
═══════════ ATTORNEYS AT LAW ═══════════

MAY 26, 2017                                                                                                                    PAGE 10

Furthermore, in weighing the impact of the stay on the parties and the balance of harms, it is clear that relief for the stay is not in the best interest of the Debtor, or the other creditors. Given the timing of the motion, a mere seven days after the Debtor's filing, Knighthead seeks to rob the Debtor of the fundamental debtor protections, the breathing space, afforded by his bankruptcy filing. The Debtor has not even had an opportunity to file a plan! Moreover, granting Knighthead relief from the stay is not in the interest of the second and third mortgage holders. If there is no equity in the Property, as Knighthead contends, these creditors stand to receive nothing at a sheriff's sale. In addition, the 2nd and 3rd mortgage holders have expressed their willingness to refinance their loans with the Debtor as part of a broader resolution of all issues effecting the Property. However, if the Debtor is able to reorganize his debt in his bankruptcy, the second and third mortgage holders likely stand to benefit from the Debtor's Chapter 11 filing. There is documentation indicating that the Property's value, even taken into the foreclosure status, is considerably higher than that assessed by Knighthead. Suffice to say that if the true value is assessed, the Debtor does have equity in the Property to secure **Knighthead**.

Knighthead's allegation that stay relief should be granted as the Property is not necessary to my reorganization pursuant to 11 U.S.C. § 362(d)(2) is also not accurate. The Property is necessary for the Debtor's reorganization, as it is his principal residence and without the same, he does not have a roof over his head, or the income to fund his plan.

In light of the above, it is the Debtor's position that Knighthead has not established good cause, particularly when the relevant *Sonnex* factors are applied. There would be substantial harm to the Debtor's interests and clear interference with the Debtor's Chapter 11 bankruptcy case. Other creditors have an equal interest in the matter and the Debtor should be allowed the

opportunity to reorganize under Chapter 11 without Knighthead seeking to torpedo her bankruptcy with an immediate motion for stay relief.

### C. *In Rem* Relief with respect to the Property pursuant to 11 U.S.C. 362(d)(4) is not appropriate

Knighthead seeks prospective *in rem* relief against the Property moving forward based on the prior bankruptcy filings of Felipe Di Stanza (*In re Di Sanza*, Case No.: 17-10984 (D.N.J.) and *In re Diamond Condo, LLC*, Case No.: 16-10619 (S.D.N.Y))., asserting that because this is the third bankruptcy filing which has impacted the Property over the past fifteen months the Court should grant relief as a matter of course, and grant prospective relief in the future. As detailed previously, the Debtor has an equitable interest in the Property, and the Property maintains sufficient equity that Knighthead's present motion should be denied, as it has failed to show cause pursuant to 11 U.S.C. §§ 362(d)(1) and/or 362(d)(2).

However, it should be further stressed that there is no basis for *in rem* relief moving forward. Multiple bankruptcy filings do not alone justify relief under 11 U.S.C. § 362(d)(4)(B), Under the statute, those filings, as well as the petition in this case, must be "part of a scheme to delay, hinder, or defraud creditors." In re Gray (3rd Cir. 2014). Before granting *in rem* relief, the Court must "scrutinize the record and determine that an abuse of the bankruptcy process has occurred, through multiple filings made with the sole intention of frustrating legitimate efforts of secured creditors to recover their collateral." In re Price, 304 B.R. 769, 773 (Bankr.N.D.Ohio 2004).

Knighthead asserts that the Debtor filed the subject petition in bad faith and for the express purposes of delaying and frustrating the foreclosure action, with the implication that it is

**M. Cabrera & Associates, PC**
═══════════════ ATTORNEYS AT LAW ═══════════════

MAY 26, 2017                                                                                                    PAGE 12

inevitable that the Debtor's case will be dismissed. This is not accurate. The only commonality between the filings is Knighthead's heavy-handed approach in refusing to allow both Diamond Condo and DiSalva a reasonable time period to complete the refinance of the Property and buyout Knighthead at the agreed upon value. The Court must see Knighthead for what it is – a creditor who seeks to cast aspersions on a Debtor who is only seeking to hold Knighthead to the terms of its offered deal.

Knighthead attempts to connect the various filings of Diamond Condo, Felipe DiSanza, and the Debtor, as evidence that the present filing is a bad faith filing is completely unfounded. Knighthead's pleadings consistently fail to provide the proper background and interplay between the various Debtor entities, and seek to portray the Debtor's filing as an abuse of the bankruptcy process, while discounting its own actions. Specifically, Knighthead insisted on unrealistic deadlines, and refused to carry the date of the sheriff's sale to allow the Debtor to finalize financing and receive Court approval. It is a situation of Knighthead using a Debtor's personal crises, to its own benefit. Knighthead is equally to blame for the multitude of filings, as the same would not have been necessary would it have been reasonable and actually continued to negotiate in good faith.

.

### D. The Debtor Can Propose a Successful Plan of Reorganization

To the contrary, there is no reason why the Debtor cannot propose a successful Chapter 11 plan that will be in the best interests of all parties, if given the opportunity. After a complete review of the specifics, it is clear the Debtor filed his Chapter 11 in good faith with the purpose of saving his primary residence, simply seeking to hold Knighthead to the terms of its previous offers.

**M. Cabrera & Associates, PC**
─────────── ATTORNEYS AT LAW ───────────

MAY 26, 2017 PAGE 13

Prior to the Debtor's bankruptcy filing, counsel for Knighthead drafted a proposed Order and Stipulation with Diamond Condo, LLC, in which Knighthead agreed to a payment of $5.8 million for full settlement of its claim. On several previous occasions, Knighthead indicated its willingness to renegotiate/buyout of its lien on the Property, and has undertaken these discussions primarily with the Debtor – not with Felipe DiSalva, the supposed owner of the Property.

The Debtor continues to have a lending commitment in the amount of $7.25 million. See **Exhibit B** to Debtor's Cert. If the Debtor is able to revisit the discussion with Knighthead regarding renegotiation / buyout of its loan, without a sheriff's sale date looming, it is likely that the matter can be resolved, and if not, the Debtor would be able to restructure Knighthead, as well as the second, third, condo association, and any past due tax liens, into a successful Chapter 11 plan – he just needs the opportunity to do so.

In addition, on May 25, 2017, to explore another option, the Debtor filed a Request to participate in the Court's Loss Mitigation Program. In that he has an equitable interest in the Property, Mr. Ebrahimzadeh should be given the opportunity and time to properly negotiate with all of the creditors with a secured claim on the Property.

**M. Cabrera & Associates, PC**
══════════════ ATTORNEYS AT LAW ══════════════

MAY 26, 2017                                                                                                            PAGE 14

### Conclusion

For the reasons set forth above, the Debtor respectfully requests that the Court deny Knighthead's motion for stay relief against the Debtor's Property.

Thank you for Your Honor's consideration of this matter.

                                              Respectfully submitted,

                                              /s/ *Matthew M. Cabrera*
                                              Matthew M. Cabrera, Esq.